UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES DANIELS, CDCR #AA-4443,<br><br>Plaintiff,<br><br>v.<br><br>A. MORENO, et al.,<br><br>Defendants. | Case No.:  22-cv-1263-JO-KSC<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

This Report and Recommendation is submitted to United States District Judge Jinsook Ohta pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1.e. and 72.3.e.

Plaintiff Charles Daniels was an inmate at R.J. Donovan Correctional Facility (RJD) during the events that give rise to his Complaint. Doc. No. 1. On August 22, 2023, plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 claiming RJD staff violated his civil rights by failing to respond appropriately to his self-reported complaints of suicidal ideation. *Id.*

On October 9, 2024, defendants Drs. Eriguel and Marquez and Officers Moreno, Lechuga, and Wingo filed a Motion for Summary Judgment arguing plaintiff failed to

1    exhaust his claims before filing his Complaint.[1] Doc. No. 47. On November 14, 2024,

2    plaintiff filed an Opposition. Doc. No. 50. On November 20, 2024, defendants filed a

3    Reply. Doc. No. 52. The Court then allowed plaintiff to file a Sur-Reply and ordered

4    defendants to respond. Doc. Nos. 53-55. Defendants' Response to Plaintiff's Sur-reply was

5    filed January 17, 2025. Doc. No. 56. For the following reasons, the Court recommends

6    GRANTING in part and DENYING in part defendants' Motion.

7    **I.    PLAINTIFF'S FACTUAL ALLEGATIONS**

8        The following facts are taken from plaintiff's Complaint and are limited to the

9    claims relating to the pending Motion.

10    **A. September 13, 2021 Incident**

11        Plaintiff claims on September 13, 2021, he woke up feeling depressed and suicidal.

12    Doc. No. 1, 10-11.[2] He was sent to an Investigative Services Unit (ISU) holding cell for an

13    unrelated incident, where plaintiff reports he told defendant Officer Wingo plaintiff was

14    feeling suicidal and needed help. *Id.* at 11. Plaintiff claims Officer Wingo laughed but

15    indicated that he would call over a sergeant. *Id.* Plaintiff then used his shirt to fashion a

16    noose that he wrapped around his neck and tied it to the overhead sprinkler. *Id.* The

17    sprinkler broke when plaintiff attempt to hang himself and staff allegedly found him on the

18    floor "in and out of consciousness" and soaking wet. *Id.*

19        Plaintiff claims staff then took him to Correctional Treatment Center (CTC), where

20    defendant Dr. Eriguel allegedly told staff plaintiff was "faking" and asked plaintiff if he

21    had attempted to hang himself to get out of Administrative Segregation. *Id.* at 11-12.

22    Plaintiff reported he was still suicidal to Dr. Eriguel, but plaintiff was assigned to a cell

23    without a suicide watch. *Id.* at 12.

---

[1] On October 9, 2024, the Court provided plaintiff with "fair notice of the requirements of the summary judgment rule." *Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988); *see also Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*).

[2] The Court refers to the CM-ECF assigned page numbers when citing filed documents.

22-CV-1263-JO-KSC

**B. September 14, 2021 Incident**

The following day, on September 14, 2021, plaintiff claims to have found "a pile of all kind of pills," which he took in hope of killing himself. *Id.* Plaintiff states he "collapsed and again . . . was found on the floor and was rushed to CTC." *Id.*

**C. September 15, 2021 Incident**

The next day, on September 15, 2021, plaintiff informed defendant Dr. Marquez he did "not want to live anymore." *Id.* Dr. Marquez allegedly told plaintiff he was "faking" and manipulating the system. *Id*. at 13.

Plaintiff claims after he met with Dr. Marquez, he also told defendant Officer Lechuga that he was still suicidal. *Id*. Plaintiff states he overheard Officer Lechuga tell defendant Officer Moreno to let plaintiff jump off the top tier rail of the Administrative Segregation area. *Id.* Plaintiff alleges Officer Lechuga then escorted plaintiff out of his cell and "passed [him] off to Officer Moreno." *Id*. Officer Lechuga is alleged to have said "that's the plan" and Officer Moreno is alleged to have responded "alright cool." *Id*. Plaintiff reports that as he approached the top of the stairs, he "was let go by Moreno and [plaintiff] jumped over the top tier" railing. *Id*. Plaintiff remembers waking up in a hospital, confined to a wheelchair, and without use of his lower limbs. *Id*.

Based on these allegations, plaintiff claims defendants Drs. Eriguel and Marquez and Officers Moreno, Lechuga, and Wingo were deliberately indifferent to his health and safety when they ignored his threats to commit suicide. *Id*. at 14, 19.

## II.   LEGAL STANDARDS

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "principal purpose[] of Rule 56 is to dispose of factually unsupported claims or defenses." *Wilkins v. Ramirez*, 455 F. Supp. 2d 1080, 1087 (S.D. Cal. 2006) (citation omitted).

The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue for trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th

1    Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rule 56 requires the

2    moving party to state the basis for its motion, and identify those portions of "the pleadings,

3    depositions, answers to interrogatories, and admissions on file, together with the affidavits,

4    if any," which it believes demonstrate the absence of a genuine issue of material fact.

5    *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56).

6        The showing required by the moving party depends upon whether that party bears

7    the burden of proof at trial. A party who moves for summary judgment on an issue or claim

8    upon which it does ***not*** bear the burden of proof at trial must simply demonstrate that the

9    non-moving party lacks evidence upon which a reasonable jury could find in the

10   nonmoving party's favor. *Oracle*, 627 F.3d at 387. Where the moving party bears the

11   burden of proof at trial, however, "'that party must show affirmatively the absence of a

12   genuine issue of material fact,' that is, '[that] no reasonable jury could find for the non-

13   moving party.'" *Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 853 (N.D. Cal. 2011)

14   (citation omitted). "Once the movant has made this showing, the burden then shift to the

15   party opposing summary judgment to designate 'specific facts showing there is a genuine

16   issue for trial.'" *Id.* The non-moving party must then "point to some facts in the record that

17   demonstrate a genuine issue of material fact and, with all reasonable inferences made in

18   the plaintiff['s] favor, that could convince a reasonable jury to find for the plaintiff[]."

19   *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citations

20   omitted). The Court must assess the movant's entitlement to summary judgment based on

21   the record before it and "with the evidence viewed in the light most favorable to the non-

22   moving party." *San Diego Police Officers Ass'n v. San Diego City Emps.' Ret. Sys.*, 568

23   F.3d 725, 733 (9th Cir. 2009).

## III.    DISCUSSION

25   The PLRA requires inmates challenging the conditions of their confinement to

26   exhaust "such administrative remedies as are available" before filing suit in federal court.

27   42 U.S.C. §1997e(a). "Exhaustion is mandatory[,]" but where an administrative remedy is

28   "effectively unavailable" to the inmate, a failure to exhaust that remedy "does not bar a

1   claim from being heard in federal court." *Soto v. Sweetman*, 882 F.3d 865, 869-70 (9th Cir.

2   2018) (internal quotation marks and citation omitted). A prisoner's failure to exhaust

3   administrative remedies is an affirmative defense for which defendants bear the burden of

4   proof. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (*en banc*). At summary

5   judgment, defendants must "prove that there was an available administrative remedy, and

6   that the prisoner did not exhaust it." *Id*.

7       Defendants argue "[t]he grievance/appeal process to exhaust administrative

8   remedies as to both health care related and non-health care related claims was available to

9   [plaintiff] at all times relevant to this action" and because he did not avail himself of that

10   process before filing this lawsuit, his claims are not exhausted. Doc. No. 47-2 at 8-9.

11   Plaintiff's opposition does not respond to defendants' exhaustion argument and instead

12   argues the merits of plaintiff's claims (Doc. No. 50); however, in his Sur-reply plaintiff

13   argues he exhausted his claims through Appeal Log No. 229638 (Doc. No. 53). Defendants

14   counter Appeal Log No. 229638 did not exhaust any claims in this case. Doc. No. 56.

15       **A.    Plaintiff Did Not Exhaust a Relevant Health Care Grievance**

16       **1.    The Health Care Grievance/Appeal Process**

17       California Code of Regulations, title 15, §§ 3999.225 – 3999.237 governs the health

18   care grievance process. Incarcerated persons may grieve "complaints of applied health care

19   policies, decisions, actions, conditions, or omissions that have a material adverse effect on

20   their health or welfare" by using CDCR 602 HC form. Cal. Code Regs. tit. 15,

21   §§ 3999.226(a), 3999.227(a) (2021).[3] The health care grievance must "include any

22   involved staff member's last name, first initial, title or position, and the date(s) and

23   description of their involvement" or "[i]f the patient does not have information to identify

24   involved staff member(s), . . . any other available information that may assist in processing

25   the health care grievance." Cal. Code Regs. tit. 15, § 3999.227(g)(1)-(2). An incarcerated

26

27

28   [3] The Court may take judicial notice of state regulations and prison rules and regulations.
    *See Navajo Nation v. Dep't of Interior,* 876 F. 3d. 1144, 1153 n. 3 (9th Cir. 2017)

1    person must submit a health care grievance "within 30 calendar days of . . . [t]he action or

2    decision being grieved, or[] [i]nitial knowledge of the action or decision being grieved."

3    Cal. Code Regs. tit. 15, § 3999.227(b)(1)-(2). "The patient shall document clearly and

4    coherently all information known and available to them regarding the issue . . . include any

5    involved staff member's last name, first initial, title or position, and the date(s) and

6    description of their involvement" or "[i]f the patient does not have information to identify

7    involved staff member(s), the patient shall provide any other available information that

8    may assist in processing the health care grievance." Cal. Code Regs. tit. 15, § 3999.227(g)

9    (1)-(2).

10        Health care grievances are subject to two levels of review: initial grievances are

11    processed at the institutional level by an institution's Health Care Grievance Office and, *if*

12    *requested*, appeals are processed at the headquarters level by the Health Care

13    Correspondence and Appeals Branch (HCCAB). Doc. No. 47-5 (Gouldy Dec'l), ¶ 3, *citing*

14    Cal. Code. Regs. tit. 15 §§ 3999.226, 3999.226(a)(1). "Health care grievances are subject

15    to a headquarters' level disposition before administrative remedies are deemed exhausted."

16    Cal. Code. Regs. tit. 15 §§ 3999.226(g).

17        **2.      Plaintiff had Access to Administrative Remedies**

18        Defendants filed a declaration by D. Gouldy, the Deputy Director of Policy and Risk

19    Management Services, which oversees the HCCAB. Doc. No. 47-5. Health care grievances

20    are tracked and maintained in an electronic database known as the Health Care Appeals

21    and Risk Tracking System. Doc. No. 47-5, ¶ 4. Gouldy is familiar with the Health Care

22    Appeals and Risk Tracking System and has searched that system for all health care related

23    grievances/appeals under plaintiff's name and inmate number containing claims relevant

24    to the heath care claims plaintiff makes in this case. *Id.* at ¶¶ 5-6.

25        Gouldy's declaration and supporting exhibits show plaintiff submitted 13 health care

26    grievances during the relevant period [between September 13, 2021 (the date of the first

27    incident at issue in this action), and August 22, 2022 (the date he filed his Complaint)],

28    including an appeal to the HCCAB. *Id.* at 9-13 (Ex. A). These grievances were assigned

tracking numbers: CIM HC 21000536; RJD HC 21001442; RJD HC 21001475; RJD HC 21001476; RJD HC 21001505; RJD HC 21001565; CIM HC 22000115; RJD HC 22000064; SVSP HC 22000349; SVSP HC 22000417; SVSP HC 22000799; SVSP HC 22001397; and SVSP HC 22001863. *Id.* at 15-123 (Ex. B-N).

Plaintiff's health care grievance and appeal history shows he knows how to access and navigate the process and that he was not thwarted in making his complaints. *Id.* Moreover, plaintiff does not contend he was ever denied access to the health care grievance process. *Albino*, 747 F.3d at 1172 (Once a defendant has met its "burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy" . . . "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."). Defendants' evidence in this case is sufficient to meet their burden to "prove that there was an available administrative remedy," so the Court must next consider whether plaintiff sought headquarters' level review of the health care/failure to treat claims he makes against Drs. Eriguel and Marquez in this case.

### 3.    Plaintiff's Relevant Health Care Grievances

Only five of plaintiff's health care grievances contain allegations related to incidents that are the subject of plaintiff's claims in this action. *Compare* Doc. No. 47-5, 15-52, 88-98 (Ex. B-F, K) with 54-86, 100-123 (Ex. G-J, L-N). These five health care grievances are CIM HC 21000536, RJD HC 21001442, RJD HC 21001475, RJD HC 21001505, and SVSP HC 22000417.

### a)    CIM HC 21000536, Doc. No. 47-5, 15-21 (Ex. B)

On September 19, 2021, plaintiff submitted health care grievance tracking number CIM HC 21000536 while housed at California Institute for Men (CIM), in which he requested "pain medication and a higher dosage to manage the pain," following his jump off the second tier of RJD's Administrative Segregation area on September 15, 2021. *Id.* at 19. Plaintiff did not name Dr. Marquez or Dr. Eriguel or otherwise implicate their

1   involvement in this health care grievance. *Id.* at 15-21 (Ex. B). On December 6, 2021, this

2   health care grievance was denied at the institutional-level. *Id.* ¶ 7, 15-16. Plaintiff did not

3   submit CIM HC 21000536 for headquarters level review. *Id.*, ¶ 7, 9-13 (Ex. A). Plaintiff

4   did not, therefore, exhaust any claims made in this case through CIM HC 21000536. *See*

5   Cal. Code Regs. tit. 15, § 3999.227(g)(1)-(2) ("The health care grievance must "include

6   any involved staff member's last name, first initial, title or position, and the date(s) and

7   description of their involvement" or "[i]f the patient does not have information to identify

8   involved staff member(s), . . . any other available information that may assist in processing

9   the health care grievance."); *see also* Cal. Code. Regs. tit. 15 §§ 3999.226(g) ("Health care

10  grievances are subject to a headquarters' level disposition before administrative remedies

11  are deemed exhausted.")

<b>b)    RJD HC 21001442, Doc. No. 47-5, 23-30 (Ex. C)</b>

13        On September 28, 2021, Daniels submitted health care grievance tracking number

14  RJD HC 21001442, in which he describes his three recent suicide attempts, complains

15  about his interactions with Drs. Eriguel and Marquez on September 13 and 15, 2021,

16  requests additional pain medication, and $200,000 compensation. Doc. No. 47-5, 23-30

17  (Ex. C). On December 8, 2021, this health care grievance was denied at the institutional-

18  level. *Id.,* ¶ 8, 23-25. Plaintiff did not submit RJD HC 21001442 for headquarters level

19  review. *Id.*, ¶ 8, pp. 9-13 (Ex. A). Plaintiff did not, therefore, exhaust any claims made in

20  this case through RJD HC 21001442. *See* Cal. Code. Regs. tit. 15 §§ 3999.226(g) ("Health

21  care grievances are subject to a headquarters' level disposition before administrative

22  remedies are deemed exhausted.")

<b>c)    RJD HC 21001475, Doc. No. 47-5, 32-38 (Ex. D)</b>

24        On October 4, 2021, plaintiff submitted health care grievance tracking number RJD

25  HC 21001475, in which he complained that he was "yet to receive any medical pain

26  treatment" for pain incurred after jumping off the top tier on September 15, 2021, and

27  requested Gabapentin. Doc. No. 47-5, 32-38 (Ex. D) at 34. Plaintiff did not name Dr.

28  Marquez or Dr. Eriguel, or otherwise implicate their involvement in this health care

8

1   grievance. *Id.* at 32-38. On November 30, 2021, this health care grievance was denied at

2   the institutional-level.  *Id.* at 32-33. Plaintiff did not submit RJD HC 21001475 for

3   headquarters level review. *Id.*, ¶ 9, 9-13 (Ex. A). Plaintiff did not, therefore, exhaust any

4   claims made in this case through RJD HC 21001475. *See* Cal. Code Regs. tit. 15,

5   § 3999.227(g)(1)-(2) ("The health care grievance must "include any involved staff

6   member's last name, first initial, title or position, and the date(s) and description of their

7   involvement" or "[i]f the patient does not have information to identify involved staff

8   member(s),  . . . any other available information that may assist in processing the health

9   care grievance."); *see also* Cal. Code. Regs. tit. 15 §§ 3999.226(g) ("Health care grievances

10  are subject to a headquarters' level disposition before administrative remedies are deemed

11  exhausted.")

12              **d)      RJD HC 21001505**, **Doc. No. 47-5, 47-52 (Ex. F)**

13          On September 28, 2021, plaintiff submitted health care grievance tracking number

14  RJD HC 21001505, in which he complained he was suffering from ongoing pain after

15  jumping off the top tier on September 15, 2021, and requesting "first, for something for

16  pain [and] [s]econd . . . to be compensated with $200,000." Doc. No. 47-5 at 50. Plaintiff

17  did not name Dr. Marquez or Dr. Eriguel or otherwise implicate their involvement in this

18  health care grievance. *Id.* at 47-52 (Ex. F). On October 20, 2021, this health care grievance

19  was rejected at the institutional-level as "a duplicate issue to that in health care grievance

20  RJD HC 21001475."  *Id.* at 47. Plaintiff did not take corrective action and did not submit

21  RJD HC 21001505 for headquarters level review. *Id.*, ¶ 16, 9-13 (Ex. A). Plaintiff did not,

22  therefore, exhaust any claims made in this case through RJD HC 21001505. *See* Cal. Code

23  Regs. tit. 15, § 3999.227(g)(1)-(2) ("The health care grievance must "include any involved

24  staff member's last name, first initial, title or position, and the date(s) and description of

25  their involvement" or "[i]f the patient does not have information to identify involved staff

26  member(s),  . . . any other available information that may assist in processing the health

27  care grievance."); *see also* Cal. Code. Regs. tit. 15 §§ 3999.226(g) ("Health care grievances

28

22-CV-1263-JO-KSC

1    are subject to a headquarters' level disposition before administrative remedies are deemed

2    exhausted.")

3              **e)      SVSP HC 22000417, Doc. No. 47-5, 88-98 (Ex. K)/**

4                       **Appeal Log 229638, Doc. No. 47-7, 41-52 (Ex. 4)**

5              On March 1, 2022, while housed at Salinas Valley State Prison (SVSP), plaintiff

6    submitted a grievance on a CDCR 602 non-health care grievance form in which he sought

7    relief for both health care and non-health care issues. Doc. Nos. 47-5, 91-94, 47-7, 49-52.

8    Plaintiff complained that Drs. Marquez and Eriguel "did not follow their rules and

9    regulations/suicide prevention" after he reported he was feeling suicidal on September 13,

10   and September 15, 2021, and "officers . . . did not follow procedures by not escorting an

11   Ad-Seg inmate with two officers and by not even attempting to stop [plaintiff] from

12   jumping off top-tier." Doc. Nos. 47-5 at 93, 47-7 at 51.

13             Plaintiff's grievance was initially designated Appeal Log 229638 and is the appeal

14   plaintiff contends exhausted the claims he makes in this case. Plaintiff's non-health care

15   grievance complaints were processed under Appeal Log 229638 and are addressed *infra*.

16             On March 9, 2022, plaintiff's health care/failure to treat claims raised in Appeal Log

17   229638 were redirected to the Correctional Health Care Services Division where they were

18   assigned health care grievance tracking number SVSP HC 22000417, and plaintiff was

19   informed "[t]he Health Care Grievance Coordinator will respond separately in accordance

20   with their governing regulations." Doc. Nos. 47-5, 95, 47-7, 44, 48. On March 16, 2022,

21   SVSP HC 22000417 was rejected at the institutional-level because "it duplicates issues

22   seen in log # RJD HC 21001442, which was received by RJC on September 20, 2021, and

23   was addressed, closed and mailed to you by RJD on December 8, 2021." Doc. Nos. 47-5,

24   88. Plaintiff did not take corrective action and did not submit SVSP HC 22000417 for

25   headquarters level review. *Id.*, ¶ 19, 9-13 (Ex. A). Plaintiff did not, therefore, exhaust any

26   health care/failure to treat claims made against Drs. Eriguel and Marquez in this case

27   through RJD HC 21001505 or Appeal Log 229638. *See* Cal. Code. Regs. tit. 15 §§

28

1  3999.226(g) ("Health care grievances are subject to a headquarters' level disposition before

2  administrative remedies are deemed exhausted.")

3              **f)**      **Additional Grievances**

4          Other than the afore-mentioned health care grievance tracking numbers, plaintiff did

5  not submit any health care grievances during the relevant period related to his claims in

6  this action. The eight additional health care grievances made during the relevant period

7  involved allegations related to a C-PAP machine [Doc. No. 47-5, 40-45 (Ex. E), 54-60 (Ex

8  G), 62-68 (Ex. H), and 80-86 (Ex. J)]; wheelchair [*Id.* at 100-106 (Ex. L)]; attendance at

9  mental health appointments and groups [*Id.* at 108-15 (Ex. M), 117-23 (Ex. N)]; and an

10  incident that was "not health care jurisdiction" [*Id.* at 70-78 (Ex. I)]. This grievance

11  involved allegations unrelated to his claims in this action (not being properly

12  decontaminated after O.C. spray exposure) and was denied at the institutional level because

13  it was "not health care jurisdiction" and again at the headquarters level. *Id*. at 70-78 (Ex. I).

14          Based on the foregoing, the Court is persuaded defendants have shown the health

15  care grievance and appeal process was available to plaintiff at all relevant times and

16  plaintiff did not avail himself of that process with respect to the claims he makes against

17  defendants Dr. Eriguel and Dr. Marquez in this case. Plaintiff has not demonstrated a

18  genuine issue of material fact exists as to either issue. Defendants have, therefore,

19  established that no reasonable jury could find in plaintiff's favor on the issue of exhaustion

20  with respect to these two defendants and the Court recommends summary judgment be

21  granted for defendants Dr. Eriguel and Dr. Marquez.

22     **B. Plaintiff Exhausted a Relevant Non-Health Care Grievance Against Moreno
23       and Lechuga but not Against Wingo**

24      **1. The Non-Health Care Grievance and Appeal Process**

25          An incarcerated person also "has the ability to submit a written grievance . . . to

26  dispute a policy, decision, action, condition or omission by the department or departmental

27  staff." Cal. Code Regs. tit. 15, § 3481(a) (2021). Under the version of the regulations in

28  effect at the time of the incidents at issue, i.e., September 2021, an incarcerated person was

22-CV-1263-JO-KSC

required to submit a grievance on form CDCR 602-1 "within 30 calendar days of discovering an adverse policy, decision, action, condition, or omission" by CDCR or its staff, unless time is extended because the individual was "in the custody of another authority for court proceedings," a patient at an outside hospital, or "temporarily housed in a medical or mental health crisis bed." Cal. Code. Regs. tit. 15, § 3482(b) (2021).[4] The incarcerated person was required to "describe all information known and available to the claimant regarding the claim, including . . . names and titles of all involved staff members (or a description of those staff members)," and any witness names and titles. Cal. Code Regs. tit. 15, § 3482(c)(2) (2021).

For grievances and appeals filed between June 1, 2020 and January 4, 2022, the administrative process has two levels of review: (1) the incarcerated person must first submit a grievance/appeal in writing to the Institutional Office of Grievances (OOG) at the prison, reentry facility, or fire camp where they are housed; and (2) if the incarcerated person wishes to appeal the OOG's decision, they may do so in writing to the Office of Appeals (OOA) in Sacramento. Cal. Code Regs. tit. 15, §§ 3480, 3481(a) (2021). A final decision by the OOA is required to exhaust a non-health care related grievance/appeal. Cal. Code Regs. tit. 15, § 3483(m)(1) (2021).

## 2. Plaintiff had Access to Administrative Remedies

Defendants filed declarations by V. McSee, a Grievance Coordinator and Correctional Counselor II at RJD, and Howard E. Moseley, the OOA Associate Director. Doc. Nos. 47-6, (McSee Dec'l.), 47-7 (Moseley Dec'l.). McSee is responsible for "receiving, logging, routing, and monitoring the disposition of . . . non-healthcare related inmate grievances at RJD," where plaintiff was incarcerated from January 10, 2020 to September 15, 2021, and again from September 24, 2021 to January 8, 2022. Doc. No. 47-

---

[4] For claims filed on or after January 5, 2022, an incarcerated person has 60 calendar days in which to submit a grievance/appeal, with time extended for similar circumstances. *See* Cal. Code. Regs. tit. 15, § 3482(b) (2025).

6, ¶¶ 1, 6. Moseley is the Associate Director of the OOA, which "receives, reviews, and maintains all final-level appeals for non-health care issues" and "keeps an electronic record of each … appeal." Doc. No. 47-7, ¶¶ 2-3. Both are familiar with their respective department's grievance/appeal tracking system and have searched that system for all non-health care related grievances/appeals under plaintiff's name and inmate number alleging officer(s) failed to protect plaintiff from self-harm on September 13, 14, or 15, 2021. Doc. Nos. 47-6, ¶¶ 3-4, 47-7, ¶ 7-8.

These declarations and supporting exhibits show plaintiff submitted fifteen grievances to the OOG during the relevant period [September 13, 2021 (the date of the first incident at issue in this action) and August 22, 2022 (the date he filed his Complaint)], including seven appeals to the OOA. Doc. Nos. 47-6, 6-16 (Ex. 1-2), 47-7, 7-24 (Ex. 1-2). These grievances were assigned Appeal Log Nos. RJD 170798, RJD 176673, RJD 182838, RJD 0190036, RJD 196897, CIM 217893, RJD 221695, CIM 222735, SVSP 229638, SVSP 231322, CIM 233405, RJD 234315, SVSP 253519, SVSP 294625, and SVSP 298149. Doc. No. 47-7, 8-9 (Ex. 1).

Defendants' evidence of plaintiff's non-health care grievance history shows he knows how to access and navigate the process and that he was not thwarted in making his complaints. *Id.* Moreover, plaintiff does not contend he was ever denied access to the non-health care grievance process. *Albino*, 747 F.3d at 1172 (Once a defendant has met its "burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy" . . . "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.")

As it is undisputed administrative remedies were available to plaintiff, the Court must next consider whether he sought OOA review of the non-health care/failure to protect claims he makes against Officers Moreno, Lechuga, and Wingo in this case.

/ /

/ /

13

### 3. Plaintiff's Relevant Non-Health Care Grievances

Only four of plaintiff's non-health care grievances contain allegations relate to the failure-to-protect claims he makes against Officers Moreno, Lechuga, or Wingo in this case. Doc. Nos. 47-6, 6-12 (Ex. 1), 47-7, 10-52 (Ex. 1-3). These grievances were assigned Appeal Log Nos. RJD 170798, RJD 221695, RJD 176673, and SVSP 229638. *Id.*

### a) Appeal Log No. 170798, Doc. No. 47-6, 6-12 (Ex. 1)

On September 26, 2021, plaintiff submitted non-health care grievance tracking number Appeal Log No. 170798, in which he alleged on September 15, 2021, at around 10:00 a.m., he "was in crisis and also having trouble breathin[g]/chest pain" when two officers allowed him to jump off the top tier of the housing unit while he was handcuffed, resulting in pain and issues walking. Doc. No. 47-6, 9-12. Appeal Log No. 170798 does not include any claims regarding the September 13 or September 14, 2021 incidents at issue in this action. *Id.* The institutional-level response to Appeal Log No. 170798 disapproved plaintiff's claim and instructed him to file a 602-2 appeal if he was dissatisfied with the decision. *Id.* at 7-8. Daniels did not appeal the institutional-level response to Appeal Log No. 170798 to the OOA. Doc. No. 47-6, ¶ 4(a). Plaintiff did not, therefore, exhaust any claims though his filing of Appeal Log No. 170798. *See* Cal. Code. Regs. tit 15 3483(m)(1) (2021) ("Completion of the review process by the [OOG] resulting in a [disapproved] decision . . . does not constitute exhaustion of all administrative remedies. . . . Exhaustion requires [an incarcerated person] to appeal such decisions as provided in section 3485 [OOA Review and Response].")

### b) Appeal Log 221695, Doc. No. 47-7, 25-39 (Ex. 3)

On January 30, 2022, while plaintiff was housed at CIM, plaintiff filed Appeal Log 221695, alleging staff failed to conduct a mental health assessment or consider his mental health when plaintiff was issued Rules Violation Report (RVR) 7122117 for damage to property when he attempted to hang himself on September 13, 2021. Doc. No. 47-7, 25-39; *see also* Doc. No. 47-6, 13-16. On April 19, 2022, plaintiff's grievance was determined to be unfounded at the institutional level. Doc. No. 47-7, 29. He then filed an appeal to the

22-CV-1263-JO-KSC

1   OOA, which rejected it on July 28, 2022, because the claim was not permitted under Cal.

2   Code Regs. tit. 15, § 3485(g)(6)(E)(2022) (A grievance "will be rejected . . . [if it] disputes

3   or contravenes the regulatory framework for the grievance and appeal process itself.") *Id*.

4   at 26.

5          This appeal did not exhaust plaintiff's claims because the OOA rejected it under the

6   regulations in place at that time. Cal. Code Regs. tit. 15, § 3485(l)(2) (2022) ("Completion

7   of the review process by the [OOA] resulting in a decision to . . . "reject" a claim in

8   accordance with subsections (g)(4) though (g)(6) . . . does not constitute exhaustion of all

9   administrative remedies available.") It also did not exhaust plaintiff's claims because his

10  appeal only took issue with the RVR 7122117 finding, which did not involve any defendant

11  and, thus, did not "alert the prison" to the claims plaintiff raises in this action. *See Griffin*

12  *v. Arpaio*, 557 F.3d 1117, 1120-21 (9th Cir. 2009) (In order to exhaust a claim a grievance

13  must "alert the prison to the nature of [the] problem" and "provide enough information ...

14  to allow prison officials to take appropriate responsive measures.")

15                    **c)  Appeal Log No. 176673, Doc. No. 47-7, 10-24 (Ex. 2)**

16         On October 10, 2021, plaintiff initiated Appeal Log No. 176673, requesting RVR

17  7121314, which was issued following the September 15, 2021 incident for "behavior

18  leading to violence," be dismissed. Doc. No. 47-7, 19-24. Plaintiff argued RVR 7121314

19  should be dismissed because: (1) "jumping off the top tier can't be force so as to injure

20  anyone"; (2) "the reporting staff did not take into consideration the severity of . . . [plaintiff]

21  being mentally impaired"; and (3) defendant Moreno and/or Sgt. H. Komiyama reported

22  plaintiff was aware of the RVR when he was not. *Id.* at 23. Plaintiff requested CDCR

23  "remove this RVR from SOMS [and] demote and or retrain Sgt. H. Komiyama." *Id*. at 21.

24  On February 28, 2022, after his grievance was disapproved at the institutional level,

25  plaintiff filed his appeal with OOA arguing "actions that didn't harm no one except

26  [plaintiff] . . . [should] not be held against him." *Id.* at 13. The OOA rejected his appeal as

27  untimely. *Id* at 11.

28  / /

22-CV-1263-JO-KSC

Appeal Log No. 176673 did not exhaust plaintiff's claims because the OOA rejected it for being untimely submitted. Cal. Code Regs. tit. 15, § 3485(l)(1) (2022) ("Completion of the review process by the [OOA] resulting in a decision to . . . "reject" a claim in accordance with subsection[] . . . (g)(6) [which requires the rejection of untimely submitted claims] . . .  does not constitute exhaustion of all administrative remedies available.") It also did not exhaust plaintiff's claims because his appeal only took issue with the RVR 7121314 finding and, thus, did not "alert the prison" to the claims plaintiff raises in this action. *See Griffin*, 557 F.3d at 1120-21 (In order to exhaust a claim a grievance must "alert the prison to the nature of [the] problem" and "provide enough information ... to allow prison officials to take appropriate responsive measures.")

### d)   Appeal Log 229638, Doc No. 47-7, 40-52 (Ex. 4)

As discussed *supra*, on March 1, 2022, while housed at SVSP, plaintiff submitted Appeal Log 229638, containing both health care and non-health care complaints. Doc. No. 47-7, 49-51. Plaintiff's health care related complaints about Drs. Eriguel and Marquez were redirected to the Correctional Health Care Services Division and processed under SVSP HC 22000417 and are addressed *supra* under the Plaintiff's Relevant Health Care Grievances section of this Report and Recommendation. *See also id.* at 44, 48; Doc. No. 47-5, 88.

Plaintiff's non-health care complaints were processed under Appeal Log 229638. On June 4, 2022, the OOA responded to Appeal Log 229638, finding Time Expired, meaning the OOA did not respond to the grievance within the requisite 60 calendar days. Doc. No. 47-7, 41. The OOA informed plaintiff "this is the Department's final response regarding this claim and this response exhausts all administrative remedies available to you for this claim." *Id.*

Defendants now argue Appeal Log 229638 did not exhaust plaintiff's administrative remedies because this grievance was untimely when plaintiff submitted it on March 1, 2022. Doc. Nos. 47-2, 23-24, 56-7, 5-6, *citing* Cal. Code. Regs. tit. 15, § 3482(b) (2021) (30-day time limit accounting for time spent in mental health crisis bed unit) and *Brannon*

22-CV-1263-JO-KSC

1  *v. Covarrubias*, No. 22-cv-16728, 2024 WL 1253788, at *2 (9th Cir. Mar. 25, 2024) ("[T]he

2  headquarters-level 'time-expired' decision did not change the fact that [plaintiff's]

3  grievance was untimely" where the "institutional-level review decision finding [plaintiff's]

4  grievance untimely served as the final response.")

5      *Brannon*, however, is distinguishable. In that case the grievance was denied at the

6  institutional level for being untimely, whereas in this case it was not. *Brannon*, 2024 WL

7  1253788, at *2. The Court will not impose a procedural bar that prison officials elected to

8  not enforce. *See Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) ("Declining to enforce

9  procedural rules when prison officials fail to do so . . . serves the state's interests in deciding

10  when to waive or enforce its own rules.") (quotation omitted).

11      The only decision in the record before the Court that was rendered on Appeal Log

12  229638 is the OOA's Time Expired decision. Doc. No. 47-7, 41. Under the regulations in

13  place when the OOA responded to Appeal Log 229638 (June 4, 2022):

14      "Time Expired," mean[s] that the department was not able to respond to the
       claim within 60 calendar days, ***resulting in the grievance level decision***
15  ***serving as the department's final decision and exhaustion of the***
   ***administrative remedies process for the claim***.
16

17  Cal. Code. Regs. tit. 15, § 3485(g)(10) (2022) (emphasis added); *see also id.* at (l)(1)

18  ("Completion of the review process by the [OOA] resulting in a decision of . . . "time

19  expired" in accordance with subsection[] . . . (g)(10) of this section constitutes exhaustion

20  of all administrative remedies available to a claimant within the department.") Plaintiff did,

21  therefore, exhaust non-health care complaints made in Appeal Log 229638 even though he

22  initiated it after his 30-day deadline to do so. The Court must next consider whether the

23  non-health complaints made in Appeal Log 229638 exhausted the claims he makes in this

24  case.

25      The non-health care complaints plaintiff made in this grievance are:

26      On 9/15/21, . . . [a]round 9 or 10 a.m., officer let me jump off the top tier. . . .
       Officers also did not follow procedures by not escorting an AD-Seg inmate
27      with two officers and by not even attempting to stop appellant from jumping
       off [the] top tier R.J.D.C.F.
28

22-CV-1263-JO-KSC

Doc. No. 47-7 at 51.

Appeal Log No. 229638 does not include any complaints regarding the September 13 or September 14, 2021 incidents at issue in this action. It also does not include any complaints against Officer Wingo, the ISU officer that plaintiff spoke with on September 13 prior to his first attempted suicide.[5] Appeal Log No. 229638, therefore, did not exhaust the claims plaintiff raises in this action relating to Officer Wingo or the September 13 and 14 incidents because it did not "alert the prison" to them. *See Griffin*, 557 F.3d at 1120-21 (In order to exhaust a claim a grievance must "alert the prison to the nature of [the] problem" and "provide enough information ... to allow prison officials to take appropriate responsive measures.")

Appeal Log No. 229638 does, however, alert prison officials to his claims that Officers Lechuga and Moreno "did not follow procedures" and did "not even attempt[] to stop [plaintiff] from jumping off [the] top tier R.J.D.C.F." on September 15, 2021. These allegations "alert the prison to the nature of [the] problem" and "provide enough information ... to allow prison officials to take appropriate responsive measures." *Id.*

### e) Additional Grievances

Defendants have offered evidence to show none of the other appeals plaintiff filed during the relevant period exhausted the claims he makes in this case. *See* Doc. No. 47-7, 8-9 (Ex. 1), 53-75 (Ex. 5), 76-93 (Ex. 6). Plaintiff does not dispute this conclusion.

/ /

/ /

---

[5] The only allegations plaintiff's Complaint makes against Officer Wingo are:

> [On September 13, 2021,] I was sent to ISU holding cell . . . for an unrelated incident that had nothing to do with my mental state of mind, but I cried out to ISU Officer Wingo I'm suicidal and for help. He laughed at me and said "yea right, I'll call my [sergeant] tho."

Doc. No. 1 at 11.

22-CV-1263-JO-KSC

## IV. CONCLUSION

Based on the foregoing, the Court is persuaded defendants have shown it is undisputed the non-health care grievance and appeal process was available to plaintiff at all relevant times and plaintiff did not avail himself of that process with respect to the claims he makes about the September 13 or 14, 2021 incidents, or against defendant Officer Wingo. Defendants have, therefore, established that no reasonable jury could find in plaintiff's favor on the issue of exhaustion with respect to these two incidents or Officer Wingo. Defendants have not established a basis for summary judgment as to plaintiffs' claims against Officers Lechuga or Moreno involving the September 15, 2021 incident.

On this basis, the undersigned Magistrate Judge **RECOMMENDS** the District Court **GRANT IN PART** and **DENY IN PART** defendants' Motion.

**IT IS HEREBY ORDERED** that no later than **February 18, 2025,** any party to this action may file written objections to this Report and Recommendation with the District Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the District Court and served on all parties no later than **February 25, 2025**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 3, 2025

Hon. Karen S. Crawford
United States Magistrate Judge

19